NASEEM STANIKZY
16068 GREENWOOD AVE N, A5
SHORELINE, WA, 98133
(206) 981 – 6971
STANIKZY.NASEEM@GMAIL.COM

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FEB 13 2023

SEAN F. McAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

## UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF WASHINGTON

NASEEM STANIKZY

     *Plaintiff(s),*

v.

THE COUNTY OF WHITMAN,
WHITMAN COUNTY,
WHITMAN COUNTY SUPERIOR COURT,
ISOBEL LUENGAS,

     *Defendant(s)*

Case No. 2:23-cv-00038-ACE

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

1)    COMES NOW Plaintiff NASEEM STANIKZY, with this complaint against

the Defendants, and alleges as follows:

### THE PARTIES TO THIS COMPLAINT

    **A.  The Plaintiff (s)**
      Naseem Stanikzy
      16068 Greenwood Ave.
      Building A Suite 5
      Shoreline King County
      (206)981-6973
      Stanikzy.Naseem@gmail.com

## B. The Defendant (s)

Defendants No. 1
Name: The County of Whitman
Title: County
Street Address: 400 N Main St.
City and County: Colfax, Whitman County
State and Zip Code: Washington State 99111
Telephone Number: (509) 397-4622
Email: clerk@co.whitman.wa.us

Defendants No. 2
Name: Whitman County
Title: County
Street Address: 400 N Main St.
City and County: Colfax, Whitman County
State and Zip Code: Washington State 99111
Telephone Number: (509) 397-4622
Email: clerk@co.whitman.wa.us

Defendants No. 3
Name: Whitman County Superior Court
Title: Court House
Street Address: 400 N Main St.
City and County: Colfax, Whitman County
State and Zip Code: Washington State 99111
Telephone Number: (509) 397-6244
Email: clerk@co.whitman.wa.us

Defendants No. 4
Name: Isobel Luengas
Title: Officer
Street Address: 2201 Grimes Way
City and County: Pullman, Whitman County
State and Zip Code: Washington State
Telephone Number: (509) 335-4929
Email: Isobel.Luengas@wsu.edu

## BASIS FOR JURISDICTION

2) Under 42 U.S.C § 1983, one may sue state or local officials for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" and "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress"

3) 42 U.S.C § 1983 also allows for Plaintiffs to challenge the constitutionality of actions by government officials or private individuals who acted under the color of state law. *See Cholla Ready Mix, Inc. v. Civish* 328 F.3d 969, 978 (9th Cir. 2004) ("Section 1983 creates a clause of action for the vindication of federal rights"); *See also 42 U.S.C § 1983.*

4) Jurisdiction is also then conferred upon this Court pursuant to 28 U.S.C. § 1343, and §1331.

## VENUE

5) Venue is proper in, and Defendants are subject to personal jurisdiction of, this Court under 28 U.S.C. § 1391, as all Defendants live within the jurisdiction of this Court; and a substantial part of the acts and omissions forming the basis of these claims occurred within the Eastern District of Washington pendent to 28 U.S.C. § 1391(b).

## STATEMENT OF CLAM

On September 21, 2021, Naseem Stanikzy, Plaintiff, entered a plea of nolo contendere or no contest on one count of Harassment (Threat to Kill); the factual basis for his conviction has never been formally adjudicated. *See Alford v. State of North Carolina*, 405 F.2d 340 (4th Cir. 1968).

## FACTS:

6) There exists a common nucleus of operative and substantive facts in this particular instant matter that began on March 8th, 2021.

7) Earlier on, following research and development at Siphon Technologies LLC, Plaintiff began attending virtual classes at Washington State University in Pullman Washington during the fall semester of 2020.

8) Plaintiff, who was a self-funded student pursuing a degree in Computer Science and Data Analytics, relocated to 1500 NE Upper Dr. in Pullman October of 2020 amid the Covid-19 Pandemic.

9) Over the course of his stay in Pullman, WA, and in January of 2021, Plaintiff moved to student housing located at 1624 NE Cougar Way, Perham Hall, 609, Pullman, WA, 99163 to virtually attend classes.

10)    Plaintiff, while in Pullman, kindled ties with relatives and family members who were in Pullman, WA, including Rouhullah Salamjohn, Balquees Salamjohn, and Basseth Salamjohn.

11)    February 2021, Plaintiff began to make asks for United States Tender from Basseth Salamjohn, although to no avail.

12)    Over the course of time, Plaintiff realized that queries for United States Tender from Basseth Salamjohn presented challenges, with potential solutions being increasingly suborn, inflexible, and difficult to work with.

13)    In finding himself in an unusual and unyielding situation, and, as a good faith measure, Plaintiff also sought assistance in the regard in the matter of his father, Azim Stanikzy, to see if he could take in working with Basseth Salamjohn.

14)    Throughout parent and child communications, Plaintiff maintained reasonable expectation of privacy, with no explicit or implicit indications that their communications were subject to being recorded, abridged, altered, or transformed in any shape, way, or form.

15)    In *Katz v United States*, 389 U.S. 347 (1967), Justice John Harlan established a two-prong test for determining a reasonable expectation of privacy. The test, as propounded by the Court in *Katz v United States*, examines what expectation upon which one may "justifiably" rely on.

16)    In *Katz*, the Court also sought to preserve as private, even in an area accessible to the public, what may be protected by the Constitution and the Fourth Amendment. That is, the "capacity to claim the protection of the Amendment depends not upon a property right in the invaded place but upon whether there was a reasonable expectation of freedom from government intrusion." *Katz v United States*, 389 U.S. 347 (1967).

17)    A two-part test suggested by Justice John Harlan in *Katz* often provides the starting point for analysis. The first element is the "subjective expectation" of privacy, which largely depends on a viable standard. *See Also Smith v. Maryland,* 442 U.S. 735, 740 (1979).

18)    The second element is whether one has a legitimate expectation of privacy that society finds "reasonable" to recognize.  *See Smith v. Maryland, 442* U.S. 735, 740 (1979).

19)    On March 8, 2021, Officer Isobel Luengas with Washington State University Police Department reports that "at approximately 2219 hours I received a text message from Azim Stanikzy that contained recorded videos of a conversation between Naseem Stanikzy and father, Azim." (**Exhibit 1**)

20)    Officer Isobel Luengas goes on to mention that Plaintiff stated, "that is going to end up in blood I guarantee you – somebody is going to die." (**Exhibit 1**)

21)    Officer Isobel Luengas reports when she asked Azim Stanikzy, "if he believed he was capable of carrying out the threats he refused to give a clear answer." (**Exhibit 1**)

22)    Officer Isobel Luengas notes that Plaintiff "was transported to Pullman Regional Hospital and Ofc. Hernandez remained with him until cleared by a MHP." (**Exhibit 1**)

23)    In the meanwhile, Officer Isobel Luengas reports that "Sgt. Steward and I went to contact Naseem's uncle, Rouhullah Salamjohn, at 1200 NW Orion Drive." And that "His wife, Balquees Salamjohn, answered the door and did not want to wake him up because he had to work early in the morning." She goes on to say, "I played the audio of Naseem making the threats for her and her son, Basseth Salamjohn." (**Exhibit 1**)

24)    Officer Isobel Luengas reports that they were "adamant" that nobody owes him money, and that "Basseth stated, 'He (Naseem) will come after any and every one.'" (**Exhibit 1**)

Prior to March 8, 2021, Plaintiff had never been charged with any form of Domestic Violence, Assault, Harassment, or threats to kill, ever, and additionally, Plaintiff up to that point had no history of any protection orders, no contact orders, or any other similar orders or charges ever filed against him or his person at any time.

25)    A Whitman County Sheriff's Department Correctional Facility Booking Sheet reports "R.C.W numbers" as "9A.46.020.2 (b) (ii)" for this incident. **(Exhibit 2)**

26)    According to Wash. Rev. Code § 9A.46.020 (1)(a)(i), a person is guilty of harassment if: "(a) Without lawful authority, the person knowingly threatens: (i) To cause bodily injury immediately or in the future to the person threatened or to any other person."

27)    Further, according to Wash. Rev. Code § 9A.46.020 (2)(a) and (b), "a person who harasses another is guilty of a gross misdemeanor.", and

> a person who harasses another is guilty of a class C felony in any of the following apply: (i) The person has previously been convicted in this or any other state of any crime of harassment, as defined in RCW 9A.46.060, of the same victim or members of the victim's family or household or any person specifically named in a no-contact or no-harassment order; (ii)The person harasses another person under subsection (1) (a) (i) of this subsection by threatening to kill the person threatened or any other person.

28)    Officer Isobel Luengas goes on to report "I Placed Naseem in Custody for felony harassment (threats to kill) and transported him to Whitman County Jail for booking." **(Exhibit 1)**.

29)    The next morning, March 9th, 2021, after the incident, a "Pre- Charge Domestic Violence No Contact Order" was filed with Whitman County Superior Court on behalf of Rouhullah Salamjohn. **(Exhibit 3)**

30)   On March 11, 2021, according to the current Whitman County Court house schedule and hours of operations, the clerk's office opened after 8:00 am, a total of over 76 hours after Plaintiff had been booked into custody. (**Exhibit 4**)

31)   Prosecuting attorney Tessa Scholl submitted information with Whitman County Superior Court for the charge on March 11, 2021. (**Exhibit 5**)

32)   According to Wash. Sup. Ct. Crim. R. 3.2.1 (f)(1),

> Unless an information or indictment is filed or the affected person consents in writing or on the record in open court, an accused, shall not be detained in jail or subjected to conditions of release for more than 72 hours after the defendant's detention in jail or release on conditions, whichever occurs first. Computation of the 72-hour period shall not include any part of Saturdays, Sundays or holidays.

33)   On March 12, 2021, plaintiff attended court via a virtual meeting hosted by Zoom Video Communications, Inc. During the meeting, Plaintiff referred to counsel, with events in court including arraignment of the Plaintiff being scheduled a week out for March 19th, 2021. (**Exhibit 6**)

34)   On March 19th, 2021, Plaintiff was again not arraigned, and instead an "Order for Competency Evaluation under RCW 10.77.060 (ORCE)" was filed with the court. (**Exhibit 7**)

35)   On April 29th, 2021, after remaining in custody and in isolation for a total of 51 days, Plaintiff was admitted to Eastern State Hospital. (**Exhibit 8**)

36)   An accused is endowed with a constitutionally mandated presumption of innocence. *State v. Crediford*, 130 Wn.2d 747, 759 (1996). This presumption

and the requirements of due process require that, with few exceptions, the accused not be deprived of his liberty until convicted. *McKenna v. Edwards*, 65 Wn. App. 905, 911.

37)    On a report dated April 30, 2021, records reported by Paul Morison, PsyD, Licensed Psychologist from Eastern State Hospital state the following:

   (i)    "He was not latent or pressured in his speech."
   (ii)   "He wore his hair long and frequently pushed his hair back from covering his face."
   (iii)  "When asked to put in his own words why he was at Eastern State Hospital, the patient stated 'Why is a question I ponder.'"
   (iv)   "He reported, 'I'm Looking for outliers. The school of agriculture forgot where grain came from. Grain came from rain.'"
   (v)    "He also stated, 'Time is a masterpiece.'"
   (vi)   "He interpreted the 'water under the bridge' proverb as, 'Bruce Lee said to be like water.'"
   (vii)  "When asked if he had a mental illness, he stated, 'We all live in a mad world.'"
   (viii) "He signed with his right hand."

   **(Exhibit 9)**

38)    Also, on a report dated May 19th, 2021, records reported by Staff at Eastern State Hospital state the following:

   (i)    "He said he was born in Pullman"
   (i)    "He was mostly cooperative with his admission interview; he at times apprehensive about signing documentation without having a copy."
   (ii)   "He denied hearing voices in a roundabout way, also asking staff 'do you have thoughts?'"
   (iii)  "Mr. Stanikzy was oriented to his geographic location and current date."
   (iv)   "When asked to interpret 'two heads are better than one' he stated 'there's always one head, so two is better.'"

(v)   "He also informed staff 'it's a limiting belief to be informed that one struggles with a mental disorder.'"

**(Exhibit 10)**

39)   On a report dated April 30, 2021, records reported by Jeremy Graham, DO, MA, FACP, Fellow of the American College of Physicians and Doctor of Osteopathic Medicine at Eastern State Hospital state the following:

(i)   "He moved to western Washington in 2007 and then to Egypt with family at age 14 in 2011 and was there for 3 years."

(ii)   "Later he lived in Venice Beach and then San Francisco, California, for some time he had a job with Sinclair Broadcasting then back to Pullman"

(iii)   "It is a privilege to participate in the care of this young man. He was evaluated and examined with staff present."

(iv)   "We will make next actions as described based on forthcoming data and clinical developments."

**(Exhibit 11)**

40)   On a report dated May 7th, 2021, records reported by Staff at Eastern State Hospital state the following:

(i)   "When asked to describe his mood, he stated after a long pause 'like a rose growing from a rock'"

(ii)   "He denied intent to harm himself, referring to a saying from his religious prophet 'died before you die'; he also added he will need 'to sleep on that.'"

(iii)   "Mr. Stanikzy admitted to getting enough sleep with no concerns."

(iv)   "Mr. Stanikzy will need to be opined competent for his return to Whitman County Jail to adjudicate his charge; jail staff to transport."

**(Exhibit 12)**

41)    On a report dated June 11th, 2021, records reported by Sarah Minott at

Eastern State Hospital state the following:

    (i)     "Mr. Stanikzy was pleasant, polite and cooperative with staff and
              ward'"

    (ii)    "His affect was consistently bright and his attitude appeared positive."

    (iii)   "He would use gestures, facial expression and written language to
              communicate needs"

    (iv)   "His thought process was linear and logical."

    (v)    "His speech was organized."

       **(Exhibit 13)**

42)    On June 10, 2021, Dr. Randall Strandquist, PsyD form Eastern State

Hospital opined that Plaintiff "does not have any mental disease". **(Exhibit 8)**

43)    Plaintiff spent a total of 99 days incarcerated, arising from and related to a

cellular phone call between a Parent and Child which was recorded, reported,

and then acted upon by Washington State University Police Department.

44)    On August 27, 2021, a "MOTION & ORDER FOR REMAND TO

DISTRICT" was filed and the matter was remanded to Whitman County

District Court for final deposition. **(Exhibit 14)**

45)    In *Mohr v. Grant*, the Washington Supreme Court held a TV reporter to have

"known" all facts contained in a thick court file for a criminal case he reviewed

briefly before doing a feature story on a mentally retarded man accused of a

crime he did not appear to understand. 153 Wn.2d 812, 108 P.3d 768 (2005).

The story focused on the man's journey through the court system and briefly on

the underlying alleged crime (threatening a local business owner who asked the man to stop washing his windows unasked in an effort to earn candy). The story did not report every allegation from police reports in the file, and the business owner who pressed charges sued, alleging he had been defamed because the TV station left out facts he said would have changed the viewer's impression of him and the accused.

46)    A municipality can be held liable under 42 U.S.C 1983 for violation of civil rights when caused by a policy or custom *Monell v. Dept. of Social Services*, 435 U.S. 658 (1983); or acquiescence in unconstitutional practices *Spell v. McDaniel,* 824 F.2d 1380 (4th Cir. 1987); or inadequate supervision or discipline *Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir. 19870 or failing to train *City of Canton v. Harris*, 489 U.S. 378 (1989).

## CLAIM

### VIOLATING PLAINTIFF'S RIGHTS UNDER COLOUR OF LAW

47)    Plaintiff herby re-alleges and incorporates by reference every allegation contained in the preceding paragraphs of this Complaint as though set forth herein.

48)    Plaintiff states that, that there is a genuine issue as to whether there was probable cause for felony case against his person. *See Dietrich Industries, Inc.*

*v. Abrams*, 455 A.2d 119, 124 (Pa. Super. Ct. 1982) (stating, "[w]hat constitutes probable cause and whether it exists under an admitted or clearly established set of facts are questions of law for the court to determine.").

49)    Plaintiff attests that 42 U.S.C § 1983 is the proper vehicle for the Plaintiff to challenge the constitutionality of actions by government officials or private individuals who acted under the color of state law. *See Cholla Ready Mix, Inc. v. Civish* 328 F.3d 969, 978 (9th Cir. 2004) ("Section 1983 creates a clause of action for the vindication of federal rights"); *see also* 42 U.S.C  §1983.

50)    Plaintiff also maintains that he need not expressly invoke Section 1983, although we liberally construe his complaint and infer that he asserts his federal constitutional claims under that statute. *See Johnson v. City of Shelby*, - U.S. --, 135 S. Ct. 346,347 (2014) (holding that a plaintiff alleging violations of constitutional rights need not expressly invoke Section 1983 in order to state a claim); *See also Hass v. Cty. Of Sacramento Dep't of Support Servs*., No. 2:13-cv-01746 JAM KJN, 2015 WL 351665, at *2 (E.D. Cal. Jan. 23, 2015) (liberally construing a pro se plaintiff's federal constitutional claims as brought under Section 1983).

51)    Plaintiff hereby though claims under 42 U.S.C § 1983 against The County of Whitman, Whitman County, The Superior Court of Whitman County, and Officer Isobel Luengas. To state his claim under Section 1983, Plaintiff alleges

that the constitutional violation he suffered was committed by persons acting under the color of law. *West v. Atkins*, 487 E.S 42, 48 (1988); *See Gomez v. Toledo*, 446 U.S 635, 640 (1980).

52)    A person deprives another of a constitutional right, within the meaning of § 1983, "if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark Cnty. Sch. Bd. Of Trs.*, 479 F.3d1175,1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

53)    The elements of a § 1983 claim are (1) the action occurred "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S 42, 48 (1988)).

54)    The question of whether a person was acting under the color of law is a factual one. *Brunette v. Humane Soc'y of Ventura County*, 294 F.3d 1205, 1209 (9th Cir. 2002).

55)    Actions taken pursuant to a municipal ordinance are made under the color of state law. *Coral Constr. Co v. King County*, 941 F.2d 910, 926 (9th Cir. 1991).

56)    In stating this claim Plaintiff alleges Defendants violated his "right to be free from unreasonable seizures as provided by the Fourth Amendment of the

United States Constitution." An unlawful seizure or false arrest claim relies on the substantive Fourth Amendment right to be free from unreasonable searches and seizures. *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986).

57)   In sum, Plaintiff has presented evidence from which a rational and reasonable jury will find that Defendants unlawfully seized Plaintiffs person versus what would have been objectively reasonable given the circumstances at the time.

58)   A trial court's conclusion, when examined under light of all events and happenings, should establish that the Defendants were objectively untrue, standing alone, and negated the effects of adverse judgment decisions.


## **INJURY**


59)   Plaintiffs suffered injury, emotional distress, sever pain, humiliation, embarrassment, and diminished respect in the eyes of his peers and importantly coadjutants with respect to the Plaintiffs true character of actions in life.

60)   The Defendants actions caused unrest, uneasiness, and anguish in the Plaintiffs personal person.

COMPLAINT - Page 16

# **RELIEF**

WHEREFORE THEN, Plaintiff, Naseem Stanikzy, prays for relief and requests that the court enter judgement by ordering:

a.  A signed & sworn letter or affidavit from Defendants be produced declaring Plaintiff's person was seized.

b.  For a judgment declaring that the Defendant(s) falsely imprisoned and/or falsely arrested the Plaintiff and

c.  For judgment ordering the Defendant(s) to pay damages in an amount of $945,499 to compensate the Plaintiff for harm caused.

d.  Such further and other legal and equitable relief as the Court may deem just and necessary under the circumstances.

## CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11x`

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

2/13/23

Dated

x

Plaintiff's Signature

Naseem  Stanikzy

Printed Name (Last, First, MI)

16068  Greenwood Ave N  Shoreline, WA, 98133

Address          City          State    Zip Code

206 981 6973

Telephone Number

Stanikzy.Naseem@Gmail.com

E-mail Address (if available)

**COMPLAINT** - Page 18